Portland Building Association *v.* Creamer.

---

THE PORTLAND BUILDING ASSOCIATION

*v.*

AMOS W. CREAMER et al.

A creditor's bill was filed to set aside as fraudulent a conveyance of lands, about one-half of which was woodland.—*Held*, that an injunction which restrained

the grantee from cutting and removing the wood from the premises, would not be continued, it appearing that the value of the land, without the wood, was ample to satisfy the creditor's claim, in case the conveyance should ultimately be annulled.

Creditor's bill. Motion to dissolve injunction on bill and answer and affidavits annexed thereto, respectively.

*Mr. J. F. Dumont,* for the motion.

*Mr. H. S. Harris, contra.*

THE CHANCELLOR.

The bill is filed by a creditor of William Creamer to set aside a conveyance made November 19th, 1879, by him to his brother, Amos W. Creamer, of the real property of the former, which is situated in Knowlton township, Warren county. It consisted, according to the deed, of two tracts particularly described, containing about two hundred and sixty-five and a half acres (but, according to the statements of the pleadings and affidavits, containing only about two hundred and twenty-six acres), and " all other tracts or parcels of land and premises of the said William Creamer, owned or possessed by him, or to which he was, at the date of the deed, in any way entitled in that township." Of the land particularly described, it appears that about one hundred acres are woodland, and the timber thereon alone is said to be worth $40 per acre. Amos (who alone has answered) swears, in his affidavit annexed to the answer, that the property is worth $2,000 " if every tree is stripped off of it." The value of the property, then, from these statements, would seem to be at least $6,000. In an affidavit attached to the bill, it is sworn that, at the date of the deed, the property was worth, at a fair market valuation, $7,000. It is probably not worth any less now. According to the deed, the consideration of the conveyance to Amos was $5,000, and a decree of this court in favor of Joseph Andrews, jun., for foreclosure and sale of the property, on which there were due June 16th, 1879, $1,834.39 ; two judgments against

William Creamer, on which there were due at that date $1,248.82; and another against him in favor of the grantee, on which there were due at that date, $1,158.89; besides further interest on those claims and costs of suit thereon, were computed and allowed as so much of the consideration. There were other judgments against the grantor, the amount due on which constituted, Amos says, the balance of the consideration. Under the execution in the foreclosure suit, the property was advertised to be sold on the 3d of November, 1879, and the sale was then adjourned for one month. A few days after the adjournment, William Creamer proposed, according to the statements of the answer, to his brother Amos, that the latter should buy the property of him for the amount of the encumbrances then on it, to which Amos consented, and a deed was made accordingly. It appears that one of the purposes to be answered by the sale to Amos, was the keeping of William in possession of the property (it was all he had) as his home, and he has ever since continued to occupy it without paying any rent, except the annual taxes. Nothing was paid on account of the consideration of the deed until about the 15th of December, nearly a month after the deed was delivered, and then the amount due the complainant in the foreclosure suit was paid, but the grantee took an assignment of the decree and directed the sheriff to adjourn the sale, and it was adjourned, at his direction, from month to month, until the 12th of November, 1880, when it was again adjourned to the 10th of December following. The bill was filed November 22d, 1880, and it prayed, among other things, an injunction to prevent Amos W. Creamer from cutting the wood and timber off the property. Up to the time of filing the bill he had, as before stated, continued the adjournment of the sale, and it then stood adjourned by him to the 10th of the following month. The complainant began suit in the Warren circuit court on its claim, which was against William Creamer, as surety on a promissory note held by it, on the 18th of April, 1879, and recovered judgment against him thereon January 26th, 1880, for $358.98 It issued execution on the judgment and levied on the property in question. At each of the various adjournments

its agent or agents attended the sale, and were ready to bid enough for the property to reach and secure its claim after paying prior encumbrances out of the proceeds. On the case, as it stands, there are these facts : The debtor conveyed the property to his brother, one of his creditors (and his brother's claim was second in order of priority), in consideration, as they allege, of the brother's agreement to pay off the encumbrances. One of their purposes was, it is admitted, to keep the debtor in possession of the property, and, to that end, to keep his creditors from selling it away from him. When the brother paid the creditor whose lien was prior to his (which payment was, as before mentioned, not made until about a month after the conveyance), he took an assignment of that creditor's claim, and adjourned the sale of the property from time to time, to prevent (according to his statement) other creditors, who had judgments prior in lien to the date of his deed, from advertising the property for sale under their judgments. By sale under the execution, the lien of those judgments would have been extinguished. When the bill was filed, which was more than a year after the date of the deed, the sale stood adjourned. Amos's debt was secure if the property had been sold under the execution. It was, as before stated, the second in order of priority. It is sworn that the property was worth $7,000, while the encumbrances on it, when the deed was given, were, according to the answer, but about $5,000, and that the complainant in this suit was ready to buy it at the sheriff's sale at a price sufficient to cover all those claims. It appears by the answer that, at the filing of the answer, Amos had paid off all the encumbrances subject to which he took the property, and had discontinued the adjournment of the sheriff's sale. There appears to me to be no reason for continuing the injunction (which is only against cutting the wood and timber), for it is not denied that, after they shall have been removed from the property, there will still be enough value in it to secure the complainant's debt and costs, if it shall be successful in this suit. The injunction will therefore be dissolved, but without costs.